# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF PUERTO RICO

**WILBERT REYES CABALLERO**

**Plaintiff,**

**v.**                                                    **CIVIL NO. 16-2952 (GAG)**

**ORIENTAL BANK,**

**Defendant.**

## <u>OPINION AND ORDER</u>

On November 9, 2016 Wilbert Reyes Caballero ("Plaintiff" or "Reyes Caballero") brought this action against Oriental Bank ("Defendant" or "Oriental") alleging age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.* (Docket No. 1). Plaintiff also invokes the Court's supplemental jurisdiction to bring claims under Puerto Rico Law 100 of June 30, 1959 ("Law 100"), P.R. LAWS ANN. tit. 29, §§ 146 *et seq.*; Puerto Rico Law 80 of May 30, 1976 ("Law 80"), P.R. LAWS ANN. tit. 29, §§185a *et seq.*, and Law 115 of December 20, 1991 ("Law 115"), P.R. LAWS ANN. tit. 29, § 194a. Essentially, Plaintiff claims that he was terminated from Oriental because of his age and retaliated against after filing an age discrimination complaint with the Equal Employment Opportunity Commission (EEOC) and the Puerto Rico Anti-Discrimination Unit (AUD). (Docket No. 1).

Pending before the Court is Defendant's Motion for Summary Judgment (Docket No. 46). Defendant claims that Reyes Caraballo failed to establish a *prima facie* case of age discrimination under ADEA because: (1) he was not qualified to continue employment at Oriental for failing to report suspicious activity involving possible money laundering, and (2) Oriental acted age-neutrally when it terminated him. <u>Id.</u> Additionally, Defendant Oriental puts forward that, even if Plaintiff

established a *prima facie* claim under ADEA, the proffered reasons for his termination were neither pretextual nor discriminatory. (Docket No. 46).

Reyes Caraballo opposes, arguing that Oriental's alleged non-discriminatory reason for his dismissal cannot be used as a factor in ADEA's *prima facie* stage. (Docket No. 60). Moreover, Plaintiff asserts that age was not treated neutrally since both employees terminated were within ADEA's protected age. As to the pretext argument, Plaintiff posits that Oriental's internal investigation demonstrates inconsistencies into his alleged violation to the bank's anti-money laundering policy and that this underscores that he was indeed terminated because of his age. Id. Defendant thereafter replied. (Docket No. 63).

After careful review of the parties' submissions and pertinent law, the Court **GRANTS** Defendant's Motion for Summary Judgment (Docket No. 46).

## I.     Defendant's Objections to Plaintiff's Response and Opposition

Before turning to the merits of the summary judgment motion, the Court briefly addresses several issues regarding Defendant's proposed statement of facts for this case. Oriental proposes a statement of eighty-seven uncontested material facts. (Docket No. 46-1). Plaintiff denies fifteen proposed facts, qualifies twenty and admits the rest. (Docket No. 59). In response to Plaintiff's objections, Oriental puts forward that Plaintiff failed to properly deny or qualify them as required by Local Rule 56(b) given that Plaintiff's responses include additional facts that are not directly related to its proposed facts. (Docket No. 63). Defendant specifically asks the Court to deem as uncontested several facts. Id. Finally, Plaintiff presents eleven separate, additional facts regarding Oriental's human resource investigation that led to his eventual termination.

Local Rule 56(b) requires a party moving for summary judgment to include a "statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no

genuine issue of material fact to be tried." L. Cv. R. 56(b). The opposing party "shall admit, deny or qualify the facts supporting the motion for summary judgment." Id. This allows the court "to easily determine the disputed facts." Malave-Torres v. Cusido, 919 F. Supp. 2d 198, 207 (D.P.R. 2013). Furthermore, "a party's denial or qualification of a proposed fact must be *strictly limited to the issue therein raised*." Natal Pérez v. Oriental Bank & Tr., 291 F. Supp. 3d 215, 219 (D.P.R. 2018) (emphasis added). The opposing party "shall support each denial or qualification by a record citation." Id. If the facts are not properly controverted, they shall be deemed admitted and uncontroverted. L. Cv. R. 56(e). See also Bautista Cayman Asset Co. v. J.A.M.A. Dev. Corp., 322 F. Supp. 3d 266, 267-68 (D.P.R. 2018); Puerto Rico Am. Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 130 (1st Cir. 2010).

Even though the primary purpose of Local Rule 56 "is to relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute," CMI Capital Mkt. Inv., LLC v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008), a court must responsibly review the record, especially the evidence upon which the statement of uncontested facts is based on, to adequately evaluate a motion for summary judgment. In this case, while engaging in said analysis, the line between Plaintiff's supported qualifications and denials can be classified as a "blurry" one, Natal Pérez, 291 F. Supp. 3d at 219. This required the Court to delve into Defendant's summary judgment exhibits, notably the parties' depositions. This independent examination aided in establishing a clearer timeline as to Reyes Caballero's alleged age discrimination claim, Oriental's inquiry into possible money laundering and the internal process for handling Plaintiff's employment termination. Attempting to balance "efficiency and access to justice" and to fill in these factual gaps, the Court will on occasion reference undisputed facts contained in the record, but not detailed in the statements of facts. Id. at 221. While bearing in mind

that at this stage the facts must be viewed "in the light most favorable to the nonmoving party," Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000), the Court deems as uncontested the following proposed facts denied or qualified by Plaintiff: 10, 19, 31, 32, 33, 34, 39, 40, 42, 53, 56, 64, 65, 66, 68, 75, 76, 79 and 80.

Generally, Plaintiff did not properly contest these facts because their propositions were not strictly limited to the issues raised by Defendant and, in other instances, a mere corroboration into the record supports Defendant's proposed fact. See Natal Pérez, 291 F. Supp. 3d at 219-220. As to those properly contested facts, the Court holds that they are neither "genuine" nor "material" to warrant a trial and thus do not limit the issuing of a summary judgment to dispose this case. On the other hand, Defendant did not properly qualify or deny Plaintiff's additional and separate facts. Hence, they are also deemed uncontested. (Docket No. 59). For convenience and readability, the Court will address these issues of facts in footnotes as they arise in the subsequent section.

## II.     Relevant Factual Background

Reyes Caballero was born in 1960 and was 56 years old when terminated from Oriental. (Docket Nos. 46-1 ¶ 1; 59 ¶ 1). He has worked in the banking industry for around thirty-five (35) years and in Oriental since 2012. (Docket Nos. 46-1 ¶¶ 2-5; 59 ¶¶ 2-5).

At Oriental, Plaintiff held the position of "Business Banker," which entailed being "responsible for the acquisition of new customers through the sale of commercial loans, commercial deposits, cash management services of POS and investment referral and the expansion of the relationships of these customers." (Docket No. 46-4). Similarly, a business banker has to "[i]mplement effective strategies to support the attraction and retention of profitable commercial customers" and "[c]onduct business within corporate policies & procedures." Id. According to the job description, a business banker must also maintain knowledge of the Bank Secrecy Act (BSA), 31 U.S.C. § 5311 *et seq.*,

regulations and all other security and bank policies and procedures. (Docket Nos. 46-1 ¶¶ 6-7; 46-4; 59 ¶¶ 6-7). These include receiving trainings on the Bank Secrecy Act and Anti-Money Laundering (jointly, "BSA/AML Policy") and the guidelines promulgated by the Office of Foreign Asset Control, among others. (Docket Nos. 46-1 ¶ 8; 59 ¶ 8).

More generally, all employees must comply with Oriental's Employee Handbook which establishes that any breach of the banks rules of behavior or performance may be the subject of disciplinary measures, including suspension and even termination. (Docket No. 46-1 ¶¶ 10-11).[1] Additionally, the Handbook specifies that "retaliating against the employee for exercising his rights under the law or policy of Oriental is strictly prohibited." Id. Plaintiff acknowledged having received this human resource document, alongside the Equal Employment Opportunity Policy, that prohibits discrimination based on age. (Docket Nos. 46-1 ¶¶ 8, 12; 59 ¶¶ 8, 12).

**A. Oriental's Anti-Money Laundering Policy and Trainings**

Oriental's compliance with BSA/AML Policy serves to protect the financial institution from "being used as an unwitting conduit for the perpetration of financial crime, including money laundering, terrorist financing, and other illicit financial transactions." (Docket Nos. 46-1 ¶ 16; 59 ¶ 16). To fulfill this overall goal, Oriental's BSA Department conducts work trainings and ensures that employees and officers understand the scope of this policy and possess the necessary tools to detect illicit and suspicious activities form their customers and prospects. (Docket Nos. 46-1 ¶ 17; 59 ¶ 17). Employees who directly manage clients or provide support to Oriental's business units, like Plaintiff, receive these trainings annually. (Docket Nos. 46-1 ¶ 23; 59 ¶ 23). As a result, Oriental

---

[1] Plaintiff qualifies this statement alluding to the fact that it constitutes an incomplete citation of the handbook, which he then includes in his opposition. (Docket No. 60 ¶ 10). This by itself is a proper qualification; yet Plaintiff then proceeds to add information no related to Defendant's proposed fact. For this reason, this proposed fact is deemed uncontested. See L. Cv. R. 56(e) (D.P.R. 2009).

relies on all its employees to report to the BSA's officer any activities that are considered "suspicious in nature," which are listed, "without limitation," in its policy. (Docket Nos. 46-1 ¶¶ 19; 46-7).[2] Similarly, as part of the BSA/AML training, all employees receive instructions on terms such as "willful blindness" and hierarchical obedience, which requires reporting even if employees with more authority notify them it is not necessary. (Docket Nos. 46-1 ¶ 20; 59 ¶ 20).[3]

During his deposition, Plaintiff stated that he felt confident about his knowledge and understanding of the BSA and other anti-money laundering laws and regulations. (Docket Nos. 46-1 ¶ 24; 59 ¶ 24). He also asserted to having received trainings regarding BSA and anti-money-laundering laws in his previous banking employments and to have completed Oriental's online courses on this subject. (Docket Nos. 46-1 ¶ 25; 59 ¶ 25). On 2013 and 2015, Reyes Caballero received other training sessions concerning anti-money laundering through Oriental's Regulatory Compliance University ("RCU"), an online program designed to train employees and validate their understanding about the subjects being tested. (Docket Nos. 46-1 ¶ 27; 59 ¶ 27).

Additional to these trainings, on September 4, 2015, Plaintiff attended an 8-hour long training seminar on "Enhanced Due Diligence" (EDD) and high-risk business visits. (Docket Nos. 46-1 ¶ 30; 59 ¶ 30). The training included techniques for identifying, visiting and evaluating "cash intensive" businesses, which include automobile dealers, as well as new and used auto parts dealers. (Docket No. 46-1 ¶ 32).[4] Generally, EDD serves to detect, understand, and monitor customer categories that

---

[2] Plaintiff denies this proposed fact advancing that Defendant relied on an incomplete and fragmented citation of the BSA/AML Policy, which he then includes in his opposition. (Docket No. 60 ¶ 19). This is not a denial, but rather a qualification. See Natal Pérez, 291 F. Supp. 3d at 219. Even though it was not properly qualified, the Court takes notices of the policy's complete citation. (Docket No. 46-7).

[3] Additional to this policy, on September 3, 2015, Oriental agreed to a Consent Order with the Federal Deposit Insurance Corporation ("FDIC") for issues related to its anti-money laundering program. (Docket Nos. 46-1 ¶ 22; 59 ¶ 22). Plaintiff denies having received a notification about the Consent Order. Id. Yet, the affidavit submitted by Defendant as an exhibit shows otherwise. (Docket No. 46-11 at 3).

[4] Plaintiff qualifies Defendant's proposed facts 31-34 and essentially contends that Mr. Jaime Serrano Cardona's businesses were not "cash intensive" and that he was not responsible for performing EDD evaluations. (Docket

pose a higher risk of money laundering, terrorist financing, or other illegal activities. <u>Id.</u> ¶ 31. In the process of identifying higher-risk customers, EDD requirements must be carried out through Customer Due Diligence ("CDD") and EDD screening procedures; the former enables the financial institution to predict the types of transactions in which a customer might engage and develop a transaction profile for deposit accounts. <u>Id.</u> ¶ 33. If during an initial interview or a periodic screening the employee determines that a customer engaged in any of these activities, the transaction cannot continue. <u>Id.</u> ¶ 34. This must then be referred to BSA/AML Department to request the closing of the account. <u>Id.</u>

### B. Plaintiff and Mr. Jaime Serrano Cardona's professional relationship

The Court takes judicial notice, pursuant to FED. R. EVID. 201, of the following facts: Mr. Jaime Serrano Cardona was indicted and convicted on April 10, 2003 before this Court for conspiring to possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1); 846, and he was sentenced to serve seventy (70) months of imprisonment. <u>See</u> <u>United States v. Serrano Cardona</u>, Crim No. 01-649 (DRD). On December 24, 2014, Mr. Serrano Cardona was indicted again for similarly related crimes and on April 3, 2017 pled guilty to conspiring to import controlled substances, in violation of 21 U.S.C. §§ 952; 960; 963, and conspiring to launder money, in violation to 18 U.S.C. §1956. <u>See</u> <u>United States v. Serrano Cardona</u>, Crim No. 14-754 (DRD). He has yet to be sentenced for these crimes. <u>Id.</u>

Around March or April 2015, Attorney Francisco Acevedo Padilla referred Mr. Serrano Cardona to Reyes Caballero as a prospective client for Oriental's repossessed vehicles business. (Docket Nos. 46-1 ¶ 41; 59 ¶ 41). After they met, however, this business did not follow through.

---

No. 59 ¶¶ 31-34). The Court agrees with Defendant's position in its reply to this qualification because a "simple reading of the EDD policy explicitly rebuts plaintiff's assertion." (Docket No. 59 at 1-2). These proposed facts are deemed uncontested. <u>See</u> L. CV. R. 56(e) (D.P.R. 2009). More about Mr. Serrano Cardona in the next section.

(Docket No. 46-2 at 61). Later that April, Mr. Serrano Cardona opened three commercial bank accounts in Oriental. (Docket Nos. 46-1 ¶ 42).[5] Before opening the accounts at Oriental, Mr. Serrano Cardona had them in Banco Santander and FirstBank, yet both banks closed the accounts, respectively. (Docket Nos. 46-1 ¶ 45; 59 ¶ 45). These accounts encompassed businesses Mr. Serrano Cardona wholly-owned, including: an auto and boat dealership, a used auto parts retailer ("junker"), an auto part distributor and a dairy farm. (Docket Nos. 46-1 ¶¶ 42, 46; 59 ¶ 46). Plaintiff Reyes Caraballo was the banker in charge of Mr. Serrano Cardona's commercial accounts. (Docket Nos. 46-1 ¶ 71-72; 59 ¶ 71-72).[6] In his deposition, Plaintiff explained that he visited Mr. Serrano Cardona's businesses, as required by the bank's policy, before he eventually referred them for approval. (Docket No. 46-2 at 90; 101; 108; 128).

In mid-June, Mr. Serrano Cardona opened another commercial account for a real estate property management corporation. (Docket Nos. 46-1 ¶ 44; 59 ¶ 44). For one of the accounts, Reyes Caballero requested and recommended an exception to Oriental's policy against accepting double endorsed check for the benefit of Mr. Serrano Cardona. (Docket Nos. 46-1 ¶ 43; 59 ¶ 43).

While opening these accounts, on or around April-June 2015, Reyes Caballero had a conversation with Mr. Manuel "Tony" Muñoz, a supervisor in Plaintiff's work division, about Mr. Serrano Cardona. (Docket Nos. 46-1 ¶ 48; 59 ¶ 48). Plaintiff personally asked Mr. Muñoz if he

---

[5] Plaintiff denies this proposed fact by submitting that the exhibits upon which they are based were not properly authenticated. (Docket No. 59 ¶ 42). Generally, authentication requires competent testimony concerning the document. See FED. R. EVID. 901(b)(1). Certain categories of documents are self-authenticating under FED. R. EVID. 902, and require no extrinsic testimony. Each document submitted in support of summary judgment must either be properly authenticated or must be self-authenticating under the Federal Rules. Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000). The authentication requirement is rarely onerous, and forms submitted by Oriental as exhibits are self-authenticating documents, under FED. R. EVID. 902(9). This proposed fact is deemed uncontested. See L. CV. R. 56(e) (D.P.R. 2009).

[6] Generally, Plaintiff denies that the documents submitted as exhibit do not identify him as the employee who opened Mr. Serrano Cardona's business account. (Docket No. 59 ¶¶ 42; 44). Even though Plaintiff did not directly open these accounts, he admitted several times during his deposition that he was the bank officer in charge of this client and that he had been assigned his portfolio. (Docket No. 46-2 at 42; 59; 62; 65; 88; 95).

knew Mr. Serrano Cardona or anything about him. (Docket Nos. 46-1 ¶ 49; 59 ¶ 49). Mr. Muñoz replied that it was rumored in the neighborhood that he was "hot." (Docket Nos. 46-1 ¶ 51; 59 ¶ 51). In his deposition, Mr. Reyes Caballero explained that someone considered "hot" is a person that could be "a pedophile, a delinquent or a thief, a rapist, a drug-trafficker, undocumented, or an abuser," etc. (Docket Nos. 46-1 ¶ 52; 46-2 at 198).[7]

Following this conversation, Plaintiff contacted his son-in-law Mr. Roberto Escobar, who was a retired U.S. Immigration and Customs Enforcement ("ICE"). (Docket Nos. 46-1 ¶¶ 57-58; 59 ¶¶ 57-58). Reyes Caballero asked him if he could find out any information about Mr. Serrano Cardona. (Docket Nos. 46-1 ¶ 59; 59 ¶ 59). Mr. Escobar referred Plaintiff to Mr. Alexis Torres, an active ICE agent. (Docket Nos. 46-1 ¶ 60; 59 ¶ 60). During a phone conversation, Mr. Torres led Plaintiff to believe that he need not worry about Mr. Serrano Cardona because he "was cooperating with the Feds." (Docket Nos. 46-1 ¶ 61; 59 ¶ 61). Irrespective of this external inquiry, Plaintiff did not document the comments that Mr. Muñoz had made to him about Mr. Serrano Cardona and he did not perform an EDD on the accounts being opened, nor he informed a BSA officer about it. (Docket Nos. 46-1 ¶ 47; 53).[8] Similarly, Reyes Caballero did not use other internal resources available to him at Oriental to clear his doubts about the "neighborhood gossip" he had heard; including contacting the Security Department or using the bank's anonymous ethics hotline. Id. ¶¶ 54; 56.

---

[7] Plaintiff denies this assertion because he clarified during his deposition that he was speculating about the possible meaning of the term "hot." (Docket No. 59 ¶ 52). Taking this into account, the Court directly cites from his deposition.

[8] Plaintiff qualified these statements on two grounds: (1) that even thou he did not perform an EDD nor document the information he informed his supervisors, Mr. Osvaldo Aguayo and Mr. Carlos Comas, about the rumor (Docket No. 59 ¶¶ 53; 56) and that (2) the EDD visits evaluations are performed by the branch managers. (Docket No. 59 ¶ 47). Plaintiff's first reason constitutes an additional fact that was not presented in a separate section and thus this Court can disregard it. The second explanation represents a proper qualification. Only proposed facts 53 and 56 are deemed uncontested. See L. Cv. R. 56(e) (D.P.R. 2009).

### C. Mr. Serrano's Cardona Mortgage Loan

After the initial commercial accounts were opened, Mr. Serrano Cardona requested a mortgage loan with Oriental for the principal amount of $849, 507.27. (Docket Nos. 46-1 ¶ 62; 59 ¶ 62). The purpose of the mortgage loan was to refinance another mortgage loan on a residential property located at Dorado Beach East in Dorado, Puerto Rico. (Docket Nos. 46-1 ¶ 63; 59 ¶ 63). Mr. Serrano Cardona had acquired this property in 2012 and was able to cash out $343,000.00. Id. Oriental's underwriting officer who reviewed Mr. Serrano Cardona's mortgage loan application, determined that credit approval required authorization for exceptions to Oriental's Mortgage Credit Policy. (Docket Nos. 46-1 ¶ 64). [9] In an e-mail exchange with Oriental's Senior Vice-president Chief Credit Officer, the officer stated that: (1) borrower was a corporation and Oriental's Mortgage Credit Policy required that mortgages for residences be made to natural individuals; (2) the corporation's financial statements were incomplete and/or lacked evidence concerning dividends received and income; (3) the corporation showed net income of $2,345 for 2014 and $9,000 for 2013, and that (4) Mr. Serrano Cardona's credit score at the time was underwhelming. Id. As part of the mortgage loan application, on June 19, 2015, Mr. Reyes Caraballo wrote an e-mail to Mrs. Virginia Guzmán, the Director of Mortgage at that time, recommending the approval of Mr. Serrano Cardona's mortgage loan. (Docket Nos. 46-1 ¶ 65; 59 ¶ 65). The e-mail message reads as follows:

> Greetings. As requested, I recommend the approval of the mortgage loan to Mr. Serrano. This client has been transferring all his banking relationships to Oriental. In addition, he has been able to demonstrate that he has been very successful in all his businesses. Mr. Serrano has good references from various commercial clients, business clients, some very important business clients, with our bank. On several

---

[9] Plaintiff denies this proposed fact and puts forward that these e-mail exchange was not properly authenticated and constitutes inadmissible hearsay. (Docket No. 59 ¶ 64). Defendant included in its Reply a statement under penalty of perjury signed by Oriental's Vice President to certify certified the authenticity of such e-mail exchange. (Docket No. 63-2). After reviewing it, the Court holds that this fact is deemed uncontested. See L. Cv. R. 56(e) (D.P.R. 2009); see also Carmona, 215 F.3d at 131.

visits to the different businesses of Mr. Serrano, I was able to see that they are *bonafide* businesses, with great acceptance.

Id.

Plaintiff Reyes Caraballo admitted that he did not review Mr. Serrano's mortgage loan application before sending the e-mail. (Docket No. 46-1 ¶ 66).[10] This email recommendation prompted the approval of the exception to Oriental's Mortgage Credit Policy. (Docket Nos. 46-1 ¶ 68).[11] On June 25, 2015, Mr. Serrano Cardona, through his wholly-owned corporation obtained the mortgage loan referred above.

### D. Oriental's Human Resources Investigation

On February 25, 2016, Oriental's Legal and Security departments initiated an investigation, after receiving a confidence from a BSA officer, into the opening of various commercial and personal deposit accounts, the extension of a residential mortgage loan and a proposed extension of a dairy farm credit to Mr. Serrano Cardona and various of his corporate entities. (Docket No. 46-1 ¶ 75).[12] The Vice-president of Human Resources at the time, Mrs. Aida Méndez, conducted the investigation. (Docket Nos. 46-1 ¶ 74; 59 ¶ 74).

---

[10] Plaintiff qualifies this statement and adds that he se sent the e-mail compliance with the instructions imparted by Mr. Carlos Comas. (Docket No. 59 ¶ 66). Once again, this constitutes an additional fact that was not presented in a separate section. Thus, it can be disregarded and is deemed uncontested. See L. CV. R. 56(e) (D.P.R. 2009).

[11] As previously held, the exhibit supporting this fact was properly authenticated by Defendant in its reply, (Docket No. 63-2), and has been deemed uncontested.

[12] Plaintiff denies this proposed fact arguing that Mrs. Aida Méndez's statement under penalty of perjury constitutes a sham affidavit. (Docket No. 59 ¶ 75). Defendant avers in opposition that Plaintiff fails to discuss how this declaration contradicts her deposition testimony and asks the Court to deem it waived as undeveloped. (Docket No. 63 at 8-9). In relation to the sham affidavit doctrine, the First Circuit has held that "[w]here a party has given clear answers to unambiguous questions in discovery, that party cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, unless there is a satisfactory explanation of why the testimony [has] changed." Escribano-Reyes v. Prof'l Hepa Certificate Corp., 817 F.3d 380, 386 (1st Cir. 2016) (citing Hernández-Loring v. Universidad Metropolitana, 233 F.3d 49, 54 (1st Cir. 2000) (internal quotation marks omitted). Even though Mrs. Méndez's statement is dated after her testimony it does not contain any information different from her deposition testimony. This statement was produced during the discovery period and not after the filing of summary judgment motion. Moreover, nothing precludes Defendant from including a statement about facts that were not even specifically addressed during her deposition. (Docket No. 46-16). For these reasons, this fact is deemed uncontested. See L. CV. R. 56(e) (D.P.R. 2009).

As part of this investigation, Mr. Angel Nieves, Mr. Carlos Comas, Mr. Osvaldo Aguayo and Mr. Ismael Borrero were all interviewed between March 7 and March 10, 2016. (Docket Nos. 46-1 ¶ 76; 59 ¶ 76). During the investigation, Plaintiff, Mr. Muñoz, Mr. Borrero, Mr. Nieves and Mr. Fausto Peña were suspended from their employment. Id.

After his suspension, on March 28, 2016, Plaintiff filed a charge in the Equal Employment Opportunity Commission and the Antidiscrimination Unit of the Department of Labor and Human Resources of Puerto Rico alleging that the suspension was motivated because of his age. (Docket Nos. 46-1 ¶ 83; 59 ¶ 83). The charge's only reference to age discrimination is that Reyes Caballero was the second oldest employee in his division. (Docket Nos. 46-1 ¶ 84; 59 ¶ 84).

Eventually, and pursuant to the information gathered through the investigation, Mrs. Méndez determined that Plaintiff and a supervisor in his division, Mr. Muñoz, had violated Oriental's BSA Policy. (Docket No. 46-1 ¶ 76). She based this action on the fact that Plaintiff received knowledge of "suspicious activities" regarding Mr. Serrano Cardona, and failed to report it to Oriental's BSA Department or Officer. Id. After the investigation, on March 11, 2016, Oriental Bank closed all Mr. Serrano Cardona's bank accounts and businesses. (Docket Nos. 46-1 ¶ 78; 59 ¶ 78). Reyes Caballero and Mr. Muñoz, who is six years younger than Plaintiff, were both terminated from their employment at Oriental on April 5, 2016. (Docket No. 46-1 ¶¶ 79-80).[13] Finally, neither during Plaintiff's suspension, nor before he was terminated from his employment, did he provide any notice of retaliation or age discrimination to Oriental's Human Resources Department. (Docket Nos. 46-1 ¶ 78; 59 ¶ 78).

---

[13] Plaintiff qualifies these facts adding that his termination was "without just cause" and that Defendant did not account for his personnel file in this process. (Docket No. 59 ¶¶ 79-80). These facts were not properly qualified as it concerns a question of law. These facts are deemed uncontested. See L. Cv. R. 56(e) (D.P.R. 2009).

In relation to Mrs. Méndez's investigation, Plaintiff denies her reasoning and proffers that here findings constitute an inadmissible conclusory statement. (Docket No. 46-1 ¶ 59). The Court finds that Reyes Caballero did not properly deny this proposed fact.[14] However, Plaintiff's separate and additional statement of facts (Docket No. 59) refers *exclusively* to Mrs. Méndez's deposition testimony as to the human resource investigation and Defendant did not properly qualify or deny these additional facts as it only opposed it generally in its reply. (Docket No. 63). See L. Cv. R. 56(e) (D.P.R. 2009). For these reasons, the Court will describe Reyes Caballero's position on this issue as they are deemed uncontested. In her deposition Mrs. Méndez stated that during the investigation: (1) she did not review Plaintiff's personnel file, (Docket No. 46-16 at 14); (2) she did not remember who initiated the investigation, (Docket No. 46-16 at 9-10), and (3) she did not know how Mr. Serrano Cardona became Oriental's client and which employees participated in the authorization and approval of the mortgage loan. (Docket No. 46-16 at 21-24). Mrs. Méndez further stated in her deposition that these details were unimportant to her inquiry because she was only investigating possible money laundering and the role of three specific employees in it, including Plaintiff. (Docket No. 46-16 at 25).

### III.    Standard of Review

It is well-settled that summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See Fed. R. Civ. P. 56(a). A

---

[14] Mrs. Méndez's statement under penalty of perjury explaining the investigation's findings is based on her own personal knowledge and interpretation of Oriental's policy. Her analysis is neither legal, nor does it amount to an impermissible conclusory allegation. See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000) ("[P]arty's own affidavit, containing relevant information of which [s]he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment.")

"genuine" issue is one that could be resolved in favor of either party, and a "material" fact is one that has the potential of affecting the outcome of the case. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-50 (1986); <u>see also</u> <u>Calero-Cerezo v. U.S. Dep't of Justice</u>, 355 F.3d 6, 19 (1st Cir. 2004). The moving party bears the initial burden of demonstrating the lack of evidence to support the nonmoving party's case. <u>Celotex</u>, 477 U.S. at 325. The movant party also "must aver an absence of evidence to support the nonmoving party's case." <u>Maldonado-Denis v. Castillo-Rodríguez</u>, 23 F.3d 576, 581 (1st Cir. 1994). If not, then the burden "shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." <u>Id.</u> The non-movant party may establish that a fact is genuinely in dispute by citing evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences. <u>Id.</u> at 255. At this stage, the court does not make credibility determinations or weigh the evidence. <u>Id.</u> Moreover, summary judgment may be appropriate if the parties "merely rest upon conclusory allegations, improbable inferences, and unsupported speculation." <u>Rossy v. Roche Prod., Inc.</u>, 880 <u>F.2d 621, 624 (1st Cir. 1989)</u>; <u>see also</u> <u>Rivera-Rivera v. Medina & Medina, Inc.</u>, 898 F.3d 77, 87 (1st Cir. 2018).

## IV. Legal Analysis

The issues before the Court are: (1) whether Reyes Caballero satisfies the requirements for a *prima facie* case of discrimination under ADEA; (2) whether Reyes Caballero was terminated because of his age while working at Oriental; (3) whether Oriental's proffered reason for Reyes Caballero's employment termination, that he failed to comply with its anti-money laundering policy, was a pretext for age discrimination, and (4) whether Oriental retaliated against Reyes Caballero for filing an EEOC and AUD discrimination charge. As to items (2), (3) and (4), the Court must determine whether a genuine issue of material fact exists, which would preclude entry of summary judgment. Similarly, the Court must entertain whether to exercise its supplemental jurisdiction over Plaintiff's commonwealth law claims.

### A. ADEA Discrimination

The ADEA makes it unlawful for an employer to "discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff bringing a suit pursuant to the ADEA "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 180 (2009). Without direct evidence of discrimination under ADEA, the Court applies a three-step, burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 (1973). See also Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995).

In the initial McDonnell Douglas stage, a plaintiff has the initial burden to establish a *prima facie* discrimination case. Rodríguez-Cardi v. MMM Holdings, Inc., 936 F.3d 40, 47 (1st Cir. 2019). This requires plaintiff to show that: (1) he was at least 40 years old; (2) his work was sufficient to meet the employer's legitimate expectations; (3) his employer took adverse action against him, and (4) "either younger persons were retained in the same position upon [his] termination or the employer

did not treat age neutrally in taking the adverse action." <u>Del Valle-Santana v. Servicios Legales De Puerto Rico, Inc.</u>, 804 F. 3d 127, 129-30 (1st Cir. 2015). In the second stage, once plaintiff proves a *prima facie* claim "the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action." <u>Rodríguez-Cardi</u>, 936 F.3d at 447. If the employer articulates said reason, in the final stage, the burden shifts back to the plaintiff, who shall then show "that the employer's proffered reason for the adverse employment action was pretextual." <u>Id.</u>

      1. Plaintiff's *prima facie* discrimination case

As a threshold matter, Plaintiff does not present any direct evidence of discrimination under ADEA. Therefore, the Court directly considers the issues under the <u>McDonnell Douglas</u> framework. (Docket No. 60). Oriental concedes the first and third prong of this analysis and disputes the rest. (Docket No. 46 at 7). As to the second prong, whether Plaintiff sufficiently met Oriental's legitimate work expectation, Defendant posits that "plaintiff was not qualified to remain employed at Oriental because he incurred in a blatant violation of Oriental's BSA Policy." <u>Id.</u> Plaintiff's failure to report information that Mr. Cardona Serrano was "hot," Oriental argues, constituted a "serious conduct that warranted the immediate termination of Plaintiff's employment." <u>Id.</u> at 13. On the fourth prong, whether Oriental treated age neutrally in terminating Plaintiff, it advances that Reyes Caballero "cannot rebut the fact that on the same day he was terminated" a younger co-worker, Mr. Muñoz, was also terminated because he was found "to have incurred in a similar BSA violation regarding the exact same investigation." <u>Id.</u> at 15. Additionally, Defendant argues that during the investigation phase into possible money laundering it treated neutrally all employees who were suspended because some were either older and/or younger than Plaintiff. (Docket No. 63 at 3-4).[15]

---

[15] The suspended employees' ages were detailed post-discovery in Defendant's Reply. For this reason, the Court did not include them in relevant facts section. (Docket No. 63 at 3-4).

Contrarily, Plaintiff avers that Oriental's second prong analysis "is conceptually flawed" because it considers in the *prima facie* framework "the stated reasons for Plaintiff's termination." (Docket No. 60 at 6). He postulates that this conflicts with the First Circuit's rationale in <u>Vélez v. Thermo King de Puerto Rico, Inc.</u>, 585 F.3d 441 (1st Cir. 2009) about how an employers' proffered business reason for termination cannot be used in a *prima facie* ADEA analysis. In relation to the fourth prong, Plaintiff puts forward that it is undisputed that "both dismissed employees were well over the protected age" and thus age was not treated neutrally. (Docket No. 60 at 6). That is Reyes Caballero was 56 years old and Mr. Muñoz 50 years old. <u>Id.</u>

When assessing the parties' argument, nothing in the record shows that Plaintiff did not meet Oriental's employment expectations until the failure to inform about Mr. Serrano Cardona's criminal background and activities. His more than 35 years in the banking industry further support this assertion. (Docket Nos. 46-1 ¶¶ 2-5; 59 ¶¶ 2-5). More so, the Court agrees with Plaintiff's contention that a court "cannot consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case." <u>Meléndez v. Autogermana, Inc.</u>, 622 F.3d 46, 51 (1st Cir. 2010) (internal quotation marks omitted) (citations omitted). Hence, because Oriental relied on Reyes Caballero's failure to report possible money laundering activities in arguing that he was dismissed for non-discriminatory reasons, the Court cannot rely on this fact when evaluating whether he satisfied the *prima facie*'s legitimate expectations prong. As the First Circuit has previously held, if the Court were to consider this argument at this stage it would "bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination." <u>Id.</u> (citations omitted).

On the other hand, a lack of age neutrality "may be manifested either by a facially discriminatory policy or by a policy which, though age-neutral on its face, has the effect of discriminating against older persons, say, by leading inexorably to the retention of younger employees while similarly situated older employees are given their walking papers." Brennan v. GTE Gov't Sys. Corp., 150 F.3d 21, 27 (1st Cir. 1998). First, the case's record is devoid of evidence showing that Oriental retained a younger employee in Plaintiff's former position. Second, on its face Oriental's human resource policy does not appear to establish a discriminatory animus. (Docket Nos. 46-1 ¶¶ 8-12). According to Oriental, all employees that were suspended, but not fired, spanned the protected and non-protected age spectrum. (Docket No. 63 at 3-4). Plaintiff merely contends that both terminated employees are "well-over the protected age." (Docket No. 60 at 6). Said contention is not enough to satisfy the not equally-treated fourth prong for a *prima facie* ADEA case. The Supreme Court has held that ADEA "prohibits discrimination on the basis of age and not class membership." O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 433 (1996). Reyes Caballero has not related his employment termination, and before that his suspension, to any action motivated because of his age. Class membership is irrelevant even "if one person in the protected class has lost out to another person in the protected class . . . so long as he has lost out because of his age." Id. Plaintiff, aside from the plain assertion that both terminated employees are within the protected age class, offers no facts that would support an inference that this conclusion is correct. As the First Circuit has held, "a nonmovant cannot rely merely upon conclusory allegations, improbable inferences, and unsupported speculation." Garmon v. Nat'l R.R. Passenger Corp., 844 F.3d 307, 313, 315 (1st Cir. 2016); see also Natal Pérez, 291 F. Supp. 3d at 231. Consequently, absent adequate evidence of discriminatory animus, Plaintiff fails to evidence a *prima facie* ADEA discrimination case.

Nonetheless, the Court shall assume *arguendo* that he satisfies this rather "low," "not onerous" nor "burdensome" *prima facie* standard and will further address Defendant's legitimate, non-discriminatory reason for termination and Plaintiff's pretext contention. See Soto-Feliciano v. Villa Cofresí Hotels, Inc., 779 F.3d 19, 23 (1st Cir. 2015); Autogermana, 622 F.3d at 50; Mesnick v. Gen. Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991); see also Morales-Guadalupe v. Oriental Bank & Tr., No. 16-1535 (GAG), 2018 WL 1116544, at *5 (D.P.R. 2018).

2.   Legitimate Business Reason and Pretext

Oriental submits that it dismissed Reyes Caballero for mishandling information received about a client, Mr. Serrano Cardona, who was potentially involved in criminal activities.  To support this decision, Defendant posits that Plaintiff received multiple trainings on money laundering and EDD and understood the protocols to follow if a client's business were identified as "cash intensive" or involving "suspicious activities."  (Docket Nos. 46-1 ¶¶ 19; 20; 24; 25).  Despite these trainings, Oriental advances that Plaintiff did not report within the bank's proper channels, *i.e.* the BSA and/or Security departments, that Mr. Serrano Cardona was opening accounts for business considered "high risk" for money laundering.  (Docket No. 46 at 16-18).  Neither did he report that he had heard from Mr. Muñoz that this client was "hot," meaning that he was possibly intricated in unlawful ventures. Id.  Instead, Reyes Caraballo made an independent inquiry with federal law enforcement authorities about this client.  (Docket Nos. 46-1 ¶¶ 59-61; 59 ¶¶ 59-61).  From these conversations, Plaintiff learned that Mr. Serrano Cardona was cooperating in on-going criminal investigations, which Oriental categorizes as a "another red flag that should have triggered additional concerns about this client and imperative necessity to report the information obtained to Oriental's BSA Office." (Docket No. 46 at 17).

The business relationship between Plaintiff and this client, even after knowing about his possible troubles with the law, led Reyes Caballero to recommend the approval of a mortgage loan requested by Mr. Serrano Cardona. Id. Yet, the reliability of this mortgage loan was questioned by Oriental's credit underwriters. (Docket Nos. 46-1 ¶ 64). Following these events and upon receiving a confidence from a BSA officer, the BSA and Legal Departments investigated Plaintiff and other employees. After being suspended during this investigation, Oriental dismissed Reyes Caballero from his employment because Mrs. Méndez -the human resource's officer in charge of the inquiry- determined that he had violated Oriental's BSA/AML Policy. (Docket No. 46-1 ¶ 76). In the end, Oriental claims that its ultimate reason for dismissing Plaintiff boils down to the fact that a "[f]ailure to comply with the BSA Policy could carry the ultimate risk of losing Oriental's license to operate." (Docket No. 46 at 18).

When a court assumes that a plaintiff has met the *prima facie* test, the burden of production (not the burden of persuasion) then shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged decision. See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000) ("The employer's burden is merely a burden of production; the employee maintains the burden of proof throughout"); see also Soto-Feliciano, 779 F.3d at 30. When analyzing the reasons proffered a court cannot "sit as super personnel departments, assessing the merits -or even the rationality- of employers' nondiscriminatory business decisions." Mesnick, 950 F.2d at 825; see also Goncalves v. Plymouth Cty. Sheriff's Dep't, 659 F.3d 101, 107 (1st Cir. 2011).

Under this analysis, and mindful that a court's "role is not to second-guess the business decisions of an employer," Rossy v. Roche Prod., Inc., 880 F.2d 621, 625 (1st Cir. 1989), Oriental easily complies with the burden of production and has therefore articulated a legitimate reason for

terminating Reyes Caballero. Now, the burden of persuasion shifts once again to Plaintiff, who must establish that this reason was a pretext for discriminating against him because of age.

### 3. Pretext

Plaintiff questions Defendant's position to the effect that that there is no "specific section" of Oriental's BSA/AML Policy that required Reyes Caballero "to report uncorroborated rumors." (Docket No. 60 at 8). Plaintiff further contends that he did not engage in "willful blindness" because he made inquiries with federal authorities and informed his supervisors about Mr. Serrano Cardona. Id. More importantly, Reyes Caballero posits that Mrs. Méndez did not assess, as part of her investigation, how Mr. Serrano Cardona or his business became Oriental's client and who had authorized his mortgage loan, nor the employees involved in this transaction. (Docket No. 60 at 8-9). For Plaintiff, these "glaring inconsistencies, incoherencies and contradictions" cast "a huge cloud of doubt . . . over the true purpose of the investigation and its real intentions." Id. at 9.

Oriental replied to Reyes Caballero's arguments and put forward that he was annually trained on BSA policies and understands what constitutes "suspicious activities" that needed to be reported. (Docket No 63 at 5). For Defendant, Plaintiff "miserably failed to follow the simple str[u]cture of the policy" and this disregard led Mr. Serrano Cardona "to be a client of Oriental for approximately one (1) year after he had received the information about [his] criminal activities." Id. at 5; 8. Specifically as to Mrs. Méndez investigation, Oriental advances that she focused the investigation on incidents involving money laundering and that Plaintiff knew about Mr. Serrano Cardona's possible unlawful activities before the mortgage loan's approval. As to his contention that he communicated to this supervisors about this client, Defendant argues that such affirmation is inadmissible hearsay evidence. Yet, even if Plaintiff had informed his supervisors, he nonetheless

sent an e-mail recommending the loan's approval by attesting "to a convicted felon's business activities as being *bona fide*." Id. at 8.

A pretext for discrimination "means something worse than a business error." Ronda-Pérez v. Banco Bilbao Argentaria-Puerto Rico, 404 F.3d 42, 45 (1st Cir. 2005). In this regard, a pretext analysis is more demanding than the *prima facie* standard. See Mariani-Colón v. Department of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 222 (1st Cir. 2007). When analyzing pretext, a court's focus "must be on the perception of the decisionmaker, that is, whether the employer believed its stated reason to be credible" and not on whether the employer was right. Azimi v. Jordan's Meats, Inc., 456 F.3d 228, 246 (1st Cir. 2006); Rodríguez-Cardi, 936 F.3d at 48. Plaintiff must do more than "merely impugn the veracity of the employer's justifications; he must elucidate specific facts which would enable a jury to find that the reason given is not only a sham[,] but a sham intended to cover up the employer's real [and unlawful motive] for discrimination." Id. (alteration in original) (quoting Mesnick, 950 F.2d at 824). These specific facts can establish pretext "by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions *in the employer's proffered legitimate reasons* such that a factfinder could infer that the employer did not act for the asserted non-discriminatory reasons." Santiago-Ramos, 217 F.3d at 56 (emphasis in original); see also Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 37 (1st Cir. 2010); Morales-Guadalupe, 2018 WL 1116544 at *5.

When considering this test, the record is lacking any evidence demonstrating that Oriental's articulated reason for its decision to terminate plaintiff is pretextual, much less a pretext to discriminate against plaintiff because of his age. See Pearson v. Mass. Bay Transp. Auth., 723 F.3d 36, 41 (1st Cir. 2013) ("[M]ere questions regarding the employer's business judgment are insufficient to raise a triable issue as to pretext"); Gray v. New England Tel. & Tel. Co., 792 F.2d

251, 256 (1st Cir. 1986).  For the most part, Plaintiff does not contest what Defendant appraised to be a serious violation of the bank's anti-money laundering policy.  Oriental's reason to terminate Reyes Caballero is based on its Employee Handbook and BSA/AML policy.  Nothing in those policies nor the handling of the internal investigation reflect a discriminatory animus towards age.  See Dávila v. Corp. de P.R. Para La Difusión Pública, 498 F.3d 9, 16 (1st Cir. 2007).  Hence, to survive summary judgment, "[i]t is not enough for [Reyes Caballero] merely *to impugn the veracity of the employer's justification or to point to flaws* in [Oriental's] investigation."  Rodríguez-Cardi, 936 F.3d at 48 (internal quotation marks omitted) (emphasis added).  This is precisely what Reyes Caballero does.  Plaintiff fails to provide sufficient evidence to create a genuine issue of material fact as to whether age was the "but for" reason for his termination.  Therefore, Oriental's motion for summary judgment on this matter is **GRANTED**.

## B. Retaliation

Plaintiff alleged in his Complaint, and reiterated in the opposition to summary judgment, that he was fired in retaliation for filing an age discrimination charge with the EEOC and the AUD.  (Docket Nos. 1; 60).  Specifically, Reyes Caballero argues that he "easily meets" the initial burden for retaliation "since he engaged in protected conduct by filing the charge of discrimination on March 28, 2016 and was fired a week later."  (Docket No, 60 at 12).  Similarly, Plaintiff posits that Oriental's retaliation defense pleads the "same glaring inconsistencies, incoherencies, and contradictions" as to its pretext arguments.  Id.

On the other hand, Oriental concedes that Plaintiff's filing constituted a protected conduct for purposes of retaliation but contends that he was already subject of an internal investigation when this event occurred.  (Docket No. 46 at 19).  Defendant holds that Plaintiff filed a "frivolous and baseless charge" to "become immune from the consequences of not complying with the regulatory

policies put in place." Id. at 19-20.  Defendant further signals out that employees terminated due to the possible money laundering incident were treated in a consisted manner because Mr. Muñoz was also terminated, and he did not file an EEOC charge.  Thus, it concludes that there is no causal connection between the filing of these charges and his termination regardless of whether there existed a "temporal proximity" between both actions.  Id.  at 20-21.

A court must analyze a retaliation claim under the familiar <u>McDonnell Douglas</u> framework.  <u>See</u> <u>Ramirez Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc.</u>, 425 F.3d 67, 84 (1st Cir. 2005). To establish a *prima facie* case of retaliation, Reyes Caballero "must show that [he] was engaged in protected conduct, that he was discharged, and that there was a causal connection between the discharge and the protected conduct."  <u>Pomales v. Celulares Telefónica</u>, Inc., 447 F.3d 79, 84 (1st Cir. 2006).  As to the causal connection prong, "[t]emporal proximity can create an inference of causation in the proper case."  Id. at 85.  If Plaintiff satisfies this element, the burden then shifts back to Defendant to show to show its reasons for termination.  <u>See</u> <u>Sanchez-Rodriguez v. AT & T Mobility Puerto Rico, Inc.</u>, 673 F.3d 1, 15 (1st Cir. 2012).  Then "[t]o defeat summary judgment in a retaliation case, [he] must point to *some* evidence of retaliation by a pertinent decisionmaker. <u>Id.</u> (internal quotations marks omitted) (citations omitted) (emphasis in original).

Even if this Court's assumes that Plaintiff established a *prima facie* showing for retaliation because there exists a temporal proximity of a week between the firing and the charge's filing, there is no evidence pointing to the fact that Oriental's reason for terminating him were pretext for age discrimination.  Plaintiff relies almost exclusively on the same inferences, or lack of thereof, as its ADEA discrimination contention.  This Court already rejected the same, concluding that no genuine issue of material fact exists.  The record reflects that the results of Oriental's investigation into

money laundering was what led to Plaintiff's dismissal and not his age. Consequently, the Court **GRANTS** Oriental's motion for summary judgment on this issue.

## C. Supplemental claims

Reyes Caballero asserts supplemental commonwealth law claims under Law 100, Law 115 and Law 80. In the absence of a valid federal claim, Oriental asks the Court to refrain from exercising supplemental jurisdiction over them. (Docket No. 46 at 22).

When deciding whether to assert supplemental jurisdiction, the Court "must exercise informed discretion." Redondo Const. Corp. v. Izquierdo, 662 F.3d 42, 49 (1st Cir. 2011) (citations omitted) (internal quotation marks omitted). Even though the court is not governed by a categorical rule, it "must weigh concerns of comity, judicial economy, convenience, and fairness" when exercising jurisdiction over state law claims. Id. The suitable inquiry is "pragmatic and case-specific." Roche v. John Hancock Mutual Life Ins. Co., 81 F.3d 249, 257 (1st Cir. 1996).

As discussed in the subsequent section, the Court will exercise supplemental jurisdiction over Law 100, Law 115, and Law 80. The advanced stage of the litigation, judicial economy and fairness compels the Court to decide the related Commonwealth law causes of action.

### 1. Law 100

Law 100, P.R. LAWS ANN. tit. 29, §§ 146 *et seq.*, prohibits discrimination because of age, and the First Circuit has held that "on the merits, age discrimination claims asserted under the ADEA and under Law No. 100 are coterminous." Dávila, 498 F.3d at 18; see also Álvarez-Fonseca v. Pepsi Cola of Puerto Rico Bottling Co., 152 F.3d 17, 27 (1st Cir. 1998).

Provided that the Court granted summary judgment on the ADEA cause of action, it **GRANTS** summary judgment for the Law 100 cause of action as well. See Velázquez-Fernández v. NCE Foods, Inc., 476 F.3d 6, 11 (1st Cir. 22007) (summary judgment dismissing ADEA and Law

No. 100 claims for lack of evidence to infer that employer's justification was a pretext for impermissible age discrimination); see also Morales-Guadalupe, 2018 WL 1116544 at *8.

2. Law 115

Law 115, 29. P.R. LAWS ANN. tit. 29, §§ 194a *et seq.*, is Puerto Rico's antiretaliation statute and "is largely symmetrical in scope and has parallel evidentiary mechanisms to the anti-retaliation provisions in . . . ADEA." Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 97 (1st Cir. 2018) (internal citations omitted) (internal quotation marks omitted); see also Wirshing v. Banco Santander de Puerto Rico, 254 F. Supp. 3d 271, 277 (D.P.R. 2015). Because Reyes Caballero's ADEA retaliation claim failed summary judgment, his Law 115 claim does so as well. Consequently, summary judgment on this issue is **GRANTED**.

3. Law 80

Law 80 entitles an employee to severance pay from his employer if he is discharged without just cause. P.R. LAWS ANN., tit. 29, § 185a. Firstly, Plaintiff bears the burden of alleging unjustified dismissal and proving actual dismissal. If he does so, "the employer must establish by a preponderance of the evidence that the discharge was made for good cause." Godoy v. Maplehurst Bakeries, Inc., 747 F. Supp. 2d 298, 318 (D.P.R. 2010); see also Hoyos v. Telecorp Communications, Inc., 488 F.3d 1, 6 (1st Cir. 2007). A "just cause" for dismissal exists when an employee is dismissed for "improper or disorderly conduct, negligent attitude towards his work, and violations of the employer's rules and regulations," among other reasons. Álvarez-Fonseca, 152 F.3d at 28; see also Otero-Burgos v. Inter Am. Univ., 558 F.3d 1 (1st Cir. 2009).

Reyes Caballero's only argument under Law 80 is that Mrs. Méndez "testified during her deposition that she did not look at Plaintiff's personnel file in the process of reaching the decision to terminate [him]" and hence, "she admitted that she did not comply with the Employee Handbook."

(Docket No. 60 at 15). As discussed earlier, the Court already noted Oriental's contention is that Plaintiff violated its BSA/AML policy and, consequently, its Employee Handbook. For Oriental this action constitutes "willful blindness" and justified his employment termination. (Docket No. 46 at 25). Once again, the Court's "role is not to second-guess the business decisions of an employer." Rossy, 880 F.2d at 625. Having deferred to Oriental's assessment that Plaintiff violated its rules and regulation and that there is no pretext for age discrimination, the Court finds that no genuine issue of material fact exists as to whether Reyes Caballero was terminated without a just cause. Thus, summary judgment on this issue is **GRANTED**.

### V. Conclusion

For the foregoing reasons, Oriental's motion for summary judgment (Docket No. 46) is **GRANTED** in its entirety. Plaintiff Reyes Caballero's ADEA, retaliation and supplemental claims are thus dismissed. Judgment shall be entered accordingly.


**SO ORDERED.**

In San Juan, Puerto Rico this 25th of November, 2019.


*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge